### SACHS et al. v. ROSELAND STATE SAV. BANK et al.

### No. 14771.

District Court, N. D. Illinois, E. D.
March 8, 1940.

Sidney W. Mandel, Millard C. Eiseman, and John G. Leininger, all of Chicago, Ill., for plaintiffs.

Karl Edwin Seyfarth and Benton Atwood, both of Chicago, Ill., for defendants.

WOODWARD, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, defendant, the Ohio National Life Insurance Company, a corporation, moves for a summary judgment on the pleadings, admissions on file and affidavits. Pursuant to Rule 30A of this Court (now Rule 7), both parties have filed briefs, the defendant in support of the motion and the plaintiff in opposition thereto. Plaintiff's attorney has requested that the Court set the matter down for oral argument. As hereinafter noted, the question is a narrow one. It has been ably and exhaustively argued in the briefs with citations of and quotations from the authorities and adjudicated cases. The Court has read and studied the briefs. The Court denies the request to argue the matter orally.

The major issue presented by the admitted facts is as to whether or not the re-insurance agreement of November 19, 1930 is void. As indicated by the findings of fact and conclusions of law this day filed, this Court is of opinion that the re-insurance agreement is void and that the defendant is not estopped in this action to assert and maintain its invalidity. Before embarking on a long and expensive trial, this question should be settled by the judgment of an appellate tribunal having final jurisdiction. If the judgment of this court should be affirmed, it would mean the end of this particular litigation. If, on the other hand, this Court should be reversed, then the major issue of liability would be settled.

And now the motion of the defendant, the Ohio National Life Insurance Company, a corporation, for the entry of a summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, coming on for hearing and determination:

And the Court, having considered said motion and the briefs of counsel in support thereof and in opposition thereto, from the pleadings, admissions on file and affidavits on file, makes the following findings of fact:

(1) On July 6, 1931 this suit was instituted in the Circuit Court of Cook County, Illinois, by certain of the creditors of the Roseland State Savings Bank, a corporation of the State of Illinois, to enforce the superadded liabilities of stockholders of said bank imposed by Section 6 of Article XI of the Constitution of the State of Illinois, Smith-Hurd Stats., the defendant, the Ohio National Life Insurance, a corporation, not being a party thereto.

(2) On July 3, 1935, by leave of Court first had and obtained, the plaintiffs filed in the Circuit Court of Cook County, Illinois, an amended and supplemental complaint making the said, the Ohio National Life Insurance Company, a corporation, a party defendant thereto.

(3) Thereafter and on August 27, 1935 the defendant, the Ohio National Life Insurance Company, a corporation, removed to this court the separable controversy against it.

(4) The plaintiffs, on July 6, 1931 were creditors of the said, the Roseland State Savings Bank, a corporation.

(5) The said, the Roseland State Savings Bank, was a corporation organized under the banking laws of the State of Illinois for the purpose of doing a banking business as authorized by such laws.

(6) On July 31, 1931 the Auditor of Public Accounts of the State of Illinois, pursuant to the statutes of the State of Illinois, appointed a receiver for the said, the Roseland State Savings Bank, a corporation, which appointment was later confirmed and approved by the Circuit Court of Cook County, Illinois.

(7) The said, the Roseland State Savings Bank, wholly ceased to do business on July 6, 1931 and was then, and continued to be, wholly insolvent.

(8) The Calumet National Life Insurance Company, a corporation, was a stockholder and the owner of shares of stock in the said the Roseland State Savings Bank as follows:

203 shares from November 14, 1928 to July 23, 1929.

350 shares from November 14, 1928 to March 11, 1930.

350 shares from November 14, 1928 to July 10, 1930.

100 shares from November 14, 1928 to February 9, 1931.

(9) The American Old Line Insurance Company, a corporation, was a stockholder and the owner of shares of stock in the said the Roseland State Savings Bank as follows:

45 shares from March 11, 1930 to February 9, 1931.

350 shares from July 10, 1930 to February 9, 1931.

(10) Prior to November 14, 1928 and up to and including January 11, 1930 the said, the Calumet National Life Insurance Company, a corporation, was duly organized to engage in the life insurance business in the state of Illinois. On January 11, 1930 it changed its name to American Old Line Insurance Company and continued to do the business of life insurance in Illinois. The said, the Calumet National Life Insurance Company, a corporation, and the said, the American Old Line Insurance Company, a corporation, are one and the same person.

(11) On November 19, 1930 said American Old Line Insurance Company entered into a reinsurance agreement with the defendant, the Ohio National Life Insurance Company, a corporation, in and by which reinsurance agreement the defendant, the Ohio National Life Insurance Company, a corporation, undertook, assumed and agreed to discharge and pay all of the contracts and liabilities of the said the American Old Line Insurance Company, a corporation.

(12) Among other things, the re-insurance contract provided that on or before January 10, 1931, "after the approval of this re-insurance agreement by the duly constituted officials of the States of Illinois and Ohio," the American Old Line Insurance Company shall transfer and assign to the defendant, the Ohio National Life Insurance Company, a corporation, all its assets and property of every kind, including all policies in force, and upon such transfer the defendant, the Ohio National Life Insurance Company, a corporation, shall assume and agree to discharge all the contracts of the American Old Line Insurance Company.

(13) The defendant, the Ohio National Life Insurance Company, a corporation, was never the owner or holder of record on the records of the said, the Roseland State Savings Bank, a corporation, of any shares of stock of said bank.

(14) The defendant, the Ohio National Life Insurance Company, a corporation, was organized under the laws of the State of Ohio for the purpose (among others) of making insurance on the lives of individuals and was engaged in the business of life insurance.

(15) During the year 1930, and during the first three months of the year 1931; the following statutory provisions were in full force and effect in the State of Ohio as a part of Chapter I of Subdivision I of Division III of Title IX of the General Code of the State of Ohio (being a part of the General Code of the State of Ohio of 1910, as amended by laws enacted in 1913 and 1925):

"Domestic.

"§ 9339. Any number of persons, not less than thirteen, may associate and form a company to make insurance upon the lives of individuals, and every insurance appertaining thereto or connected therewith, on the mutual or stock plan, and grant, purchase, or dispose of annuities."

"§ 9340. Such persons shall file in the office of the secretary of state articles of incorporation, signed by them, setting forth their intention to form a company for the purposes named in this chapter, which articles shall comprise a copy of the charter they propose to adopt. The charter shall set forth the name of the company, which shall not be the corporate name or title used to designate any fire, life, marine, or other insurance company existing under the laws of this state, the place where it is to be located, the kind of business to be undertaken, the manner in which its corporate powers are to be exercised, the number of directors or trustees, the manner of electing them and other officers, a majority of whom shall be citizens of this state, the time of such election, the manner of filling vacancies, the amount of capital to be employed, and such other particulars as are necessary to explain and make manifest the objects and purposes of the company, and the manner in which it is to be conducted. Such directors and trustees must be stockholders or members, and the number thereof may be increased at the will of the stockholders representing a majority of the stock, or of a majority of the members, to not more than twenty-one."

"§ 9341. When such articles are filed in the office of the secretary of state, and the name assumed by the company is not so nearly similar to that of any other company organized in this state as to lead to confusion or uncertainty on the part of the

public, the secretary of state shall submit them to the attorney-general for examination. If found by him to be in accordance with the provisions of this chapter, and not inconsistent with the constitution and laws of the United States and of this state, he shall certify to and deliver them to the secretary of state, who shall cause them, with the certificate of the attorney-general, to be recorded in a book to be kept for that purpose. Upon application of the signers thereof the secretary of state shall furnish to them a certified copy of such articles and certificate."

"§ 9342. When the signers of such articles receive from the secretary of state a certified copy thereof, and desire to organize such company, they shall publish their intention in a paper published and having general circulation in the county in which the company is to be organized. After the publication has been made for six weeks, they may open books to receive subscriptions to the capital stock, keep them open until the amount required by this chapter is subscribed, distribute the stock among the subscribers, if more than the necessary amount is subscribed, collect the capital and complete the organization of the company."

"§ 9343. No joint stock company shall be organized under this chapter with less than one hundred thousand dollars capital. Before proceeding to business, the whole capital shall be paid in and invested in treasury notes, in stocks or bonds of the United States, or of the state of Ohio, or of any municipality or county thereof, or in mortgages on unincumbered real estate within this state worth double the amount loaned thereon, or in farm loan bonds issued under the provisions of the act of congress known as the federal farm loan act approved July 17, 1916, and amendments thereto."

"§ 9344. If the amount loaned exceeds one-half the value of the land mortgaged, exclusive of structures thereon, such structures shall be insured in an authorized fire insurance company in any amount not less than the difference between one-half the value of such land exclusive of structures, and the amount loaned, and the policy assigned to the mortgagee."

"§ 9345. When in the opinion of the board of directors thereof, a company organized under any law of this state, requires a larger amount of capital than that fixed by its articles of incorporation, if authorized by the holders of two-thirds of the stock, they shall file with the secretary of state a certificate setting forth the amount of the desired increase, and thereafter the company shall be entitled to have the increased amount of capital fixed by the certificate, which shall be invested as required by the preceding two sections."

"§ 9346. Any such company may invest its capital in such stocks, bonds, or mortgages, and change and invest it or any part thereof in like manner, at pleasure. But no company shall commence business until it has deposited with the superintendent of insurance at least one hundred thousand dollars, in such stocks, bonds, and mortgages, or one or more of them, duly made or assigned to the superintendent in trust for the purposes mentioned in this chapter. When a mortgage of real estate is assigned to the superintendent, the assignment shall be immediately entered in the records of the county in which the real estate is situated, the fee for the recording of which shall be paid by the company."

"§ 9347. The superintendent of insurance shall hold such securities as security for policy holders in the company; but so long as any company so depositing continues solvent he shall permit it to collect the interest or dividends on such securities, and from time to time to withdraw them, or a part thereof, on depositing with him other securities of the kinds heretofore named, and of equal value with those withdrawn."

"§ 9348. In case a company making or maintaining such deposit, through inadvertence or by reason of not having securities in such denominations as to make the exact sum of one hundred thousand dollars, deposits securities in excess of the requirement, such excess shall be held in trust for the company and not for the benefit of policy holders, and shall be returned to the company making the deposit on its demand."

"§ 9349. When the company is fully organized and has deposited the requisite amount of securities, it shall file with the superintendent of insurance a duly certified copy of its articles of incorporation and approval of the attorney general, and a copy of its by-laws or constitution. If the superintendent finds that the company is duly organized and that its capital stock has been subscribed, paid in and invested as required by law, unless he finds the name

assumed by the company so nearly similar to the name of another company doing business in this state as to lead to confusion or uncertainty on the part of the public, he shall furnish the company with his certificate of such deposit, and with a license duly reciting that the company has complied with the law and is entitled to transact the business defined in section 9385, which license shall be its authority to commence business and issue policies."

"§ 9350. So long as the company complies with the law, the superintendent, annually, upon its application, shall renew such license. Certified copies thereof may be used in evidence for and against the company in all actions."

"§ 9351. No company organized under the laws of this state to do the business of life, accident or health insurance, either on stock, mutual, stipulated premium or assessment plan, shall consolidate with any other company, or reinsure its risks, or any part thereof with any other company, or assume or reinsure the whole of or any portion of the risks of any other company, except as hereinafter provided. Nothing herein contained shall prevent any such company from reinsuring a fractional part of any individual risk; not exceeding four-fifths thereof, in a company duly authorized to transact business in this state, or, with the permission of the superintendent of insurance, the whole of such risk; but no company, except as hereinafter provided, shall reinsure any part of any of its risks when the aggregate amount of its risks reinsured shall equal fifty per cent of its total insurance in force."

"§ 9352. When any such company proposes to consolidate with any other company, or enter into any contract of reinsurance, it shall present its petition to the superintendent of insurance, setting forth the terms and conditions of the proposed consolidation or reinsurance, and praying for the approval or of any modification thereof, which the commission hereinafter provided for may approve."

"§ 9353. The superintendent thereupon shall issue an order of notice, requiring notice to be given by mail to the policy-holders of such company, of the pendency of such petition, and the time and place at which it will be heard, and the publication of the order of notice and petition, in five daily newspapers to be designated by him, at least one of which shall be published in the city of Columbus, for at least two weeks before the time appointed for the hearing on the petition."

"§ 9354. The governor or in the event of his inability to act, some competent person resident of the state to be appointed by him, the attorney-general, and the superintendent of insurance, shall constitute a commission to hear and determine upon such petition. At the time and place fixed in such notice, or at such time and place as is fixed by adjournment, the commission shall proceed with the hearing, and may make such examination into the affairs and condition of the company as it may deem proper. The superintendent of insurance may summon and compel the attendance and testimony of witnesses and the production of books and papers before the commission. Any policy-holder or stockholder of the above named company or companies may appear and be heard in reference to such petition."

"§ 9355. If satisfied that the interests of the policy-holders of such company or companies are properly protected, and that no reasonable objection exists thereto, the commission may approve and authorize the proposed consolidation or reinsurance, or of such modification thereof as seems to it best for the interests of the policy-holders, and make such order with reference to the distribution and disposition of the surplus assets of any such company thereafter remaining, as shall be just and equitable. Such consolidation or reinsurance shall only be approved by the consent of all the members of the commission, whose duty it will be to guard the interests of the policy-holders of any such company or companies proposing to consolidate or reinsure."

"§ 9356. All expenses and costs incident to such proceedings shall be paid by the company or companies bringing such petition."

"§ 9357. A company organized under the laws of this state may invest its accumulations as follows:

"1. In the United States, state, county, school, or city bonds, or farm loan bonds issued under the provisions of the act of congress known as the federal farm loan act approved July 17, 1916, and amendments thereto.

"2. In bonds and mortgages upon unincumbered real estate, the market value of which is at least double the amount loaned thereon, at the date of the investment, and

in bonds and mortgages upon leasehold estates on real estate for ninety-nine years renewable forever, unincumbered, except rentals accruing therefrom to the owner of the fee, the market value of which leasehold estate is at least double the amount loaned thereon at the date of the investment. If the amount loaned exceeds one-half of the value of the land mortgaged, or one-half of the value of the leasehold estate mortgaged, exclusive of structures thereon, such structures must be insured in an authorized fire insurance company or companies, in an amount not less than the difference between one-half the value of such land, or leasehold estate, exclusive of structures, and the amount loaned, and the policy, or policies shall be assigned to the mortgagee. The value of such real or leasehold estate, shall be determined by valuation, made under oath by two real estate owners, residents of the county where the real estate, or leasehold, is located.

"3. In loans upon the pledge of such bonds or mortgages, if the current market value of the bonds or mortgages is at least twenty-five per cent. more than the amount loaned thereon.

"4. In loans upon its own policies, not exceeding the reserve or present value thereof, computed according to the American experience table of mortality with interest at four per cent. or according to such other higher standard or standards as the company has adopted, the reserve being the amount of debts of life insurance companies by reason of their outstanding policies in gross, and which may be so treated in the returns for taxation made by them. Such companies may sell, change, or reinvest such investments, or any part thereof, at pleasure."

"§ 9358. The preceding section shall not prohibit a company from accepting any other assets than therein enumerated in payment of debts due it, in order to protect its interests, or from acquiring real estate for its own use, or by foreclosure in accordance with the laws of this state, provided that unincumbered real estate as referred to in the preceding section shall be held to mean real estate not subject to any other lien, except taxes or assessments not yet due."

"§ 9359. No company organized under the laws of this state shall purchase, hold or convey real estate, except for the purposes and in the manner herein set forth:

"1. Such as is requisite for its immediate accommodation in the transaction of its business.

"2. Such as has been mortgaged to it in good faith, by way of security for loans previously contracted, or for money due.

"3. Such as has been conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

"4. Such as it has purchased at sales upon judgments, decrees, or mortgages obtained or made for such debts."

"§ 9364. All companies organized under any law of this state shall continue corporations for the purpose for which they were chartered, but subject to all the provisions, requirements, and penalties imposed on companies organized under this chapter, and entitled to all the benefits and privileges of this chapter."

"Foreign.

\*      \*      \*      \*      \*

"Domestic and Foreign.

"§ 9385. No company, organized under the laws of this state, shall undertake any business or risk, except as herein provided, and no company, partnership or association, organized or incorporated by act of congress, or under the laws of this or any other state of the United States, or by any foreign government, transacting the business of life insurance in this state, shall be permitted or allowed to take any kind of risks, except those connected with, or appertaining to make insurance on life or against accidents to persons, or sickness, temporary or permanent physical disability, and granting, purchasing and disposing of annuities; nor shall the business of life insurance, or life and accident insurance in this state, be in any wise conducted or transacted by any company, partnership or association which in this state, or any other state or county, makes insurance on marine, fire, inland, or any other risk, or does a banking or any other kind of business in connection with insurance."

(16) The statutory requirements relative to re-insurance were not complied with in that

1. The Superintendent of Insurance of Ohio never issued any order of notice, requiring that policy holders be notified of the pendency of any petition relative to said alleged Re-insurance Agreement and of the time and place it would be heard, or requiring publication of any order, notice, or petition relative thereto.

2. The commission, composed of the Governer, Attorney-General, and Superintendent of Insurance of Ohio, never proceeded with any hearing and never made any examination into the affairs of either company in connection with said Re-insurance Agreement.

3. Said commission never approved or authorized said alleged Re-insurance Agreement, or any re-insurance by this defendant of the risks of the American Old Line Insurance Company.

4. Said commission never, by "the consent of all the members" thereof, approved said alleged Re-insurance Agreement or any re-insurance by this defendant of the risks of the American Old Line Insurance Company.

(17) Between the years 1927 and 1930 the records of the office of the superintendent of insurance of Ohio show that in at least four instances re-insurance agreements were approved by the Superintendent of·Insurance alone in proceedings in which no notice was given, no publication of notice was made and no hearing was had.

(18) In numerous instances the insurance department waived the requirement of the giving of notice by mail and the publication of the order of notice, as well as the appointment of a commission, and instead, the superintendent of insurance, acting alone, approved the proposed reinsurance agreements.

(19) Generally, where the reinsuring company was an Ohio corporation, the insurance department of the State of Ohio did not require the giving of notice, any publication, or the appointment of any commission, but, instead, the superintendent of insurance, in administering the provisions of the statutes referred to by the defendant, the Ohio National Life Insurance Company, approved the proffered reinsurance agreements, acting alone.

(20) Where, in the judgment of the superintendent of insurance of the State of Ohio, the reinsuring company was not particularly large, and, especially, where the reinsuring company was an Ohio corporation, the proposed reinsurance agreement was approved by the superintendent of insurance without requiring the mailing of notice to policy holders, the publication of the order of notice, or the appointment of any commission.

Upon the above and foregoing findings of fact, the Court states the following conclusions of law:

(1) The motion of the defendant, the Ohio National Life Insurance Company, a corporation, for the entry of a summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure should be allowed.

■ (2) The Re-insurance Contract shown as Exhibit B to the amended and supplemental ,bill of complaint and bearing date November 19, 1930 is void.

■ (3) The defendant, the Ohio National Life Insurance Company, a corporation, was without power to assume the stockholders liability of the American Old Line Insurance Company, a corporation.

■ (4) The defendant, the Ohio National Life Insurance Company, a corporation, is not estopped to assert the defense of ultra vires.

(5) Judgment should be entered in favor of the ·defendant, the Ohio National Life Insurance Company, a corporation, and against the plaintiff for costs of suit.